261 So.2d 583 (1972)
261 La. 831
STATE of Louisiana
v.
Joseph Junius BAILEY, Jr.
No. 51464.
Supreme Court of Louisiana.
May 1, 1972.
*584 Jack B. Wise, Walter Naquin, Jr., Thibodaux, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Wilmore J. Broussard, Jr., Dist. Atty., Walter I. Lanier, Jr., Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant was indicted for murder by the Lafourche Parish Grand Jury, found *585 guilty of manslaughter by the jury, and sentenced to serve 16 years at hard labor. During the trial proceedings 16 bills of exceptions were reserved, but only eight of them are argued and briefed for this court. Since the other eight bills of exceptions have been abandoned, although perfected and presented in the record, they will not be considered. The eight bills argued and briefed are presented under six specifications of error and will be treated in the same manner in this opinion.

Specification of Error No. 1.
After the trial defendant filed a motion for a new trial reurging the matters to which bills of exceptions had been previously taken and, additionally, contending that there was a prejudicial error or defect in the trial proceedings which had not been known to him at the time. He stated that one of the members of the jury gave a false answer on voir dire examination with regard to a prior affiliation with a law enforcement agency, and that this resulted in a deprivation of defendant's right to establish a challenge for cause or to exercise a peremptory challenge. After a hearing in the matter, including an examination of the juror in question, the trial court ruled against the motion for a new trial, and Bill of Exceptions No. 15 was reserved.
On voir dire examination defense counsel asked the juror: "Have you ever been a member of a law enforcement agency, sir?" The juror answered, "No, sir", and after additional questioning on other matters he was accepted to serve on the jury. At the hearing on the motion for new trial the juror admitted that he had once served as a radio operator for Troop "M" of the Louisiana State Police for almost two years and presently held a commission as a deputy sheriff for Lafourche Parish. The juror explained that when he was asked the question, he gave what he felt to be a truthful answer since he thought the question was whether he was a policeman. He stated that he held the deputy sheriff's commission so that he could carry a gun in connection with his job as a driver's license examiner because he was required to carry rather large sums of money. No salary was paid to him by the sheriff's office, and he never used the authority given under the commission for any other purpose. While working as a radio operator for Troop "M" the juror received and transmitted all radio messages, kept a daily log of all calls, and maintained files on wanted persons and stolen cars, but he did not wear a badge, carry a gun, or participate in any of the activities of the police officers in investigating crimes and capturing criminals.
Under these factual circumstances defendant would not have been successful in a challenge for cause. Article 797 of the Code of Criminal Procedure enumerates the grounds of challenge for cause. This objection would have to fall within the second category: "(2) The juror is not impartial, whatever the cause of his partiality. * * *" The voir dire examination of this juror shows him to be impartial. The juror admitted that he was friendly with members of the sheriff's department, but he said that his friendship would not affect his decision in the case. He also stated that he would be able to accept the law as charged by the judge and apply it to the facts of the case. At the hearing on the motion for a new trial the juror testified that he had performed his duties to the best of his abilities, and that he was not partial to the State because of his prior association with any law enforcement department.
In State v. Square, 257 La. 743, 244 So. 2d 200 (1971), this court held that there was no abuse of discretion in the trial court's ruling that a potential juror could not be challenged for cause although he had once been a policeman, his father was a member of the sheriff's department, and he was friendly with others in the sheriff's office. In State v. Reese, 250 La. 151, 194 So.2d 729 (1967), the court found the trial judge correct in ruling that a potential juror who was a deputy sheriff could not for this reason be challenged for cause. See *586 also 5 Wharton's Criminal Law and Procedure (Anderson's Ed.1957) § 1979. Certainly the facts of this case do not warrant an excusal of this juror on a challenge for cause.
The defendant argues that even if he could not be successful in his challenge for cause, he should have been entitled to this information for exercise of the right of peremptory challenge. There was, however, no action taken by the trial court to prevent the exercise of that right. The defendant was not prohibited from questioning the juror, who was in fact thoroughly examined on voir dire. The difficulty arose when the juror in good faith misunderstood the particular question and failed to comprehend the intent and purpose of defense counsel in this interrogation. The term "law enforcement agency" is broad in scope and is subject to numerous interpretations. For example, the voir dire examination here revealed that this juror was in fact employed as a driver's license examiner. Undoubtedly many would consider the driver licensing division of the Department of Public Safety a law enforcement agency, and defendant could have taken notice of the job orientation of this juror and pursued a more definite line of interrogation. If the defendant was actually anxious not to have any person on the jury who was in any manner connected or affiliated with police work, he could have been more specific in the questions. Jurors, who are laymen and not learned in the law, are not expected to be perfect in their understanding of voir dire examination, and it is the obligation of the State and of the defense to make them comprehend the questions asked. Defendant is not entitled to a new trial on the speculation that if he had obtained certain information about this prospective juror, he might have exercised one of his peremptory challenges.

Specification of Error No. 2.
Bill of Exceptions No. 13 was reserved when the trial court refused to give one of the requested special charges submitted by defense counsel. A requested charge must be given by the trial court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. The charge need not be given, however, if it is included in the general charge or in another special charge that is to be given. Art. 807, C.Cr.P.
At the trial the judge read two special charges submitted by the district attorney and two submitted by defendant. All four of these charges, as well as the charge which the trial court refused to read to the jury, dealt with the law of self-defense. The special charge which the trial court refused to read was taken from two decisions of this court, State v. Thompson, 45 La.Ann. 969, 13 So. 392 (1893), and State v. Boudreaux, 185 La. 434, 169 So. 459 (1936). The language taken from the first case defined justifiable homicide, stated that a person may repel force with force without retreating, and may pursue his adversary until he is secure from all danger, and that when the adversary is killed during such action, it is justifiable if there is a reasonable belief by the person in the danger and in the necessity for the killing. The language from the second case stated that even if the adversary was turning or running away, the person may kill the adversary if he believes he is still in danger and that his adversary is leaving only to gain a better position from which to strike.
The trial court refused to give this charge because it felt that these legal points had already been covered by the other charges. Defendant argues that the charges which were read to the jury did not include a statement of law about the right of pursuit, and that this was essential to the defense of justifiable homicide. He points out that the victim was turning away at the time the shots were fired as the medical evidence established that one shot entered from the back of the victim, and that without knowledge of the legal right of the defendant to pursue his adversary the *587 jury had no alternative but to bring in a verdict of guilty.
It first must be noted that there is no evidence made a part of this bill of exceptions, or any of the bills argued to this court, which shows that the victim was retreating at the time he was shot and that the defendant was pursuing him. Without such evidence it is impossible to conclude that the defendant was entitled to have the charge in question read to the jury. But if we accept the State's concession in oral argument that the victim was shot in the back as sufficient to warrant consideration of this right to pursue, the charges read to the jury completely and fairly inform the jury of the law.
The pertinent portion of R.S. 14:20 reads: "A homicide is justifiable: (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger * * *." (Emphasis here and elsewhere supplied.) It is vital that the jury realize that its determination must be made upon a consideration of the two key requirements of a reasonable belief of danger and of the necessity for the killing. Any and all circumstances surrounding the death are to be considered by the jury before concluding that these two requirements are met. See Reporter's Comment on R.S. 14:20, and Bennett, The Louisiana Criminal Code, 3 La.L.Rev. 6, 14.
The purpose of charging the jury is to inform them of the law and, at the same time, give both the defendant and the State an appraisal of the law that is fair. Neither the State nor the defendant has a right to choose the particular language to be used in charging the jury. Their right is limited to having the jury properly charged on the law. Repetition, clever manipulation of language, overly technical instructions, lengthy explanations, use of examples and hypothets can in fact produce an overall effect upon the jury unfair to the State or the defense. A simple and clear instruction of the pertinent law is the best and fairest jury charge. In this case the judge's charge, including the four special charges, gave full and fair instructions to the jury on the law, and there is no basis for this complaint.

Specification of Error No. 3.
This specification of error is based upon Bills of Exceptions Nos. 11 and 12, both of which involve an attempt by the defense to introduce evidence which it claimed would bolster the plea of self-defense. The evidence concerned a cut on the defendant's leg alleged to have been inflicted when he kicked the gun out of the hand of the deceased. Some 17 days after the crime, while the defendant was in jail, his counsel called the cut to the attention of a deputy sheriff and had it photographed. Since the defense, however, introduced no evidence to connect this cut with the crime, both the photographs and the testimony of the deputy sheriff (who had no information as to how the cut came to be on defendant's leg except what the defendant told him in the jail) were clearly irrelevant and were therefore properly ruled out upon the State's objection.

Specification of Error No. 4.
Bill of Exceptions No. 16 was reserved to the court's refusal to order the State to answer certain of the interrogatories embodied in a supplemental motion for bill of particulars. The defense sought to obtain by these interrogatories information as to whether any dangerous weapon was found near the body of the deceased; the ownership of the gun; the names and addresses of the persons who had knowledge of the crime or who had been interviewed by the police in connection with the crime; records of arrests and convictions of all persons the State planned to call as witnesses; inspection of all tangible objects obtained during investigation; the right to inspect and copy all photographs of the scene of the crime and the body of the deceased; all *588 evidence, known then or later to the State, that was exculpatory in nature or favorable to the accused. In substance, what the defense sought was to learn the State's whole case.
Under Code of Criminal Procedure Article 484 it is clear that the function of the bill of particulars is to set up "more specifically the nature and cause of the charge against the defendant", and the article states that the court "may require the district attorney" to furnish a bill of particulars. Since the indictment in the instant case charges the crime in the short form, the district attorney was required to furnish a bill of particulars; he was not, however, required to disclose the evidence by which he expected to prove his case. State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). Specifically, the State is not required to furnish the defense with a list of its witnesses. State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), and cases there cited.
In requesting all favorable or exculpatory material, the defendant relies on the United States Supreme Court case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the proposition that "* * * the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". We agree with the State, however, that the defendant's request for information was a fishing expedition into the files and records of the State without any specific knowledge of what evidence, if any, he wanted. Our recent decision in State v. Gladden, 260 La. 735, 257 So.2d 388, decided January 17, 1972, distinguishes Brady, and what we said there is applicable here. In Gladden the court stated:
"Aside from the obvious fact that there has been no showing that any portion of the reports contained any evidence favorable to the defendant, we do not find the Brady Case applicable here. * * *
"Underlying this holding [in Brady] is the principle that the business of the government is not to achieve victory but to establish justice. The principle is expressed in the idea that the government wins its point when justice is done in its courts.
"Implicit in the Brady holding is the requirement that there be `known' perjured testimony used by the State or a deliberate deception; or that the State, although not soliciting false evidence, allows it to go uncorrected when it appears.
"Here defense counsel had plainly embarked upon a fishing expedition without having shown that the reports sought would establish evidence in his favor. * * *"
The granting or refusal of a bill of particulars addresses itself to the sound discretion of the trial judge. State v. Barksdale, supra, and cases cited. Moreover, the ruling of the trial judge denying an accused data sought in a motion for bill of particulars will not be disturbed in the absence of a clear showing that the judge abused his discretion to the prejudice of the accused. State v. Andrus, supra, and cases cited. We find no abuse of discretion here.

Specification of Error No. 5.
Bills of Exceptions Nos. 1 and 3, upon which Specification of Error No. 5 is based, were taken to the overruling of objections by the defense to the following question asked by the State of several prospective jurors on voir dire examination: "Do you understand that justice is done when the guilty are convicted as well as when the innocent are set free?" Counsel for defendant objected on the ground that this was a misstatement of law and placed a false impression in the minds of the jurors. The judge thought the question proper.
*589 Code of Criminal Procedure Article 786 says: "* * * The scope of the [voir dire] examination shall be within the discretion of the court. * * *" In this situation, as in all matters in which the trial judge is vested with great discretion, we do not reverse unless it is shown that the discretion has been unwisely exercised, provided that the judge allowed considerable latitude in examination of jurors. State v. Square, 257 La. 743, 244 So.2d 200 (1971). Counsel for defendant has in no manner pointed out how the judge abused his discretion by this ruling, but states only that this is a prejudicial misstatement of the law and discusses the purpose of the criminal trial. In our view the question was not a statement (or misstatement) of law, but rather an inquiry of a philosophical nature regarding justice, which is accomplished when the guilty are convicted and the innocent set free. While the question is totally irrelevant in an evaluation of a juror's qualifications, its use here is not reversible error.

Specification of Error No. 6.
After the State had rested, defense counsel moved for the production by the State from its files of any evidence and statements of any kind in the State's possession which might be favorable to the defense. The motion was denied, and the defense reserved Bill of Exceptions No. 10, which forms the basis of this specification of error.
As in Specification of Error No. 4, defendant relies on Brady v. Maryland, supra. For the reasons stated in our discussion of that specification Brady has no application here.
Also cited are Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). These two cases, like Brady, simply condemn the State's knowing use of false evidence to affect the outcome of the trial. In Giles, only one member of that court, Mr. Justice Fortas, expressed the view that the State was obliged to reveal such evidence "which is material, generously conceived, to the case, including all possible defenses". The "majority opinion", subscribed to by only three members of the court, expressly refrained from considering whether the prosecution's constitutional duty to disclose extended to all evidence admissible and useful to the defense. The four dissenters declared that they were of the view that the United States Constitution does not demand that the prosecution disclose to defense counsel all information which is exonerative or helpful. It cannot be said that these decisions lend any support to this argument. The motion by which defendant sought to secure the evidence in the instant case is not the proper device for presenting the issue decided by Brady, Napue, and Giles.
The conviction and sentence are affirmed.